FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELLE C.,<br><br>                Plaintiff,<br><br>    vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                Defendant. | No. 2:17-cv-00339-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 14, and grants Defendant's motion, ECF No. 15.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

ORDER - 2

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that [she] is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-

ORDER - 3

(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

ORDER - 4

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform work that she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can perform past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant can perform other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can adjust to other work, the Commissioner must

ORDER - 5

find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

If the claimant is not capable of adjusting to other work, analysis concludes with a

finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R.

§§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant

can perform other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 15, 2014, Plaintiff applied both for child's insurance disability

benefits under Title II and Title XVI supplemental security income benefits

alleging a disability onset date of October 1, 2010. Tr. 220-33. The application

was denied initially, Tr. 141-47, and on reconsideration, Tr. 151-54. Plaintiff

appeared before an administrative law judge (ALJ) on March 29, 2016. Tr. 52-94.

On May 12, 2016, the ALJ denied Plaintiff's claim. Tr. 20-51.

At step one of the sequential evaluation process, the ALJ found Plaintiff has

not engaged in substantial gainful activity since the alleged onset date. Tr. 26. At

ORDER - 6

step two, the ALJ found that Plaintiff has the following severe impairments: depressive disorder, bereavement disorder, anxiety, and non-epileptic "staring spells." Tr. 26.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 29. The ALJ then concluded that Plaintiff has the RFC to perform:

> medium work . . ., which consists of lifting and carrying up to 50 pounds occasionally and up to 25 pounds frequently, however, [Plaintiff] has no limitations regarding sitting, standing, or walking. [Plaintiff] also has the following limitations: [Plaintiff] must avoid unprotected heights and cannot operate heavy machinery. [Plaintiff] can never climb ropes, ladders or scaffolds. [Plaintiff] should avoid concentrated exposure to odors, dust, gases, and fumes. [Plaintiff] is capable of simple and routine tasks with occasional detailed work. [Plaintiff] can have superficial brief contact with the general public and occasional non-collaborative contact with coworkers. [Plaintiff] functions best working independently and works better with objects, rather than people. [Plaintiff] is limited to only ordinary production requirements.

Tr. 32.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 43. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform,

ORDER - 7

such as: stuffer, toy assembler, and basket filler. Tr. 44-45. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of October 1, 2010, though the date of the decision. Tr. 45.

On August 10, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-9, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her child disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly identified Plaintiff's severe physical impairments at step two;

2. Whether the ALJ properly evaluated Plaintiff's symptom claims;

3. Whether the ALJ properly evaluated the medical opinion evidence;

4. Whether the ALJ properly incorporated the opined limitations into the RFC; and

ORDER - 8

5.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 12.

**DISCUSSION**

**A. Step Two: Severe Impairments**

Plaintiff contends the ALJ erred by failing to identify her gastrointestinal problems as a severe impairment at step two.  ECF No. 14 at 14.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  20 C.F.R. §§ 404.1508, 416.908 (2010).[1]  The claimant's own statement of symptoms alone will not suffice.  *Id.*

---

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised.  The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 9

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Soc. Sec. Rlg. (SSR) 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, dealing with changes in a routine work setting, and responding appropriately to supervision, coworkers, and usual work situations. 20 C.F.R. § 416.921(a) (2010);[2] SSR 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe

---

[2] As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 10

impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

At step two, the ALJ concluded that Plaintiff had the severe impairments of depressive disorder, bereavement disorder, anxiety, and non-epileptic "staring spells." Tr. 26. After detailing the medical evidence pertaining to Plaintiff's gastrointestinal issues, the ALJ found the objective medical evidence did not support a finding that Plaintiff's gastrointestinal issues caused more than a minimal limitation in her ability to perform basic work activities. Tr. 26-27 (citing Tr. 318-19, 326, 331-68, 1140, 1184). Plaintiff argues, without citation to a specific record, that her providers, including Dr. Arnold Cohen, considered her gastroparesis to be a severe impairment. ECF No. 14 at 14. This argument is unpersuasive for several reasons.

First, Plaintiff failed to support her asserted argument with citation to the record. Factual and legal support must accompany contentions. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). By failing to support her asserted contention, Plaintiff waived this argument. *See id.*; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Second, Plaintiff's contention lacks merit. While Dr. Cohen commented that Plaintiff's stomach issues were a serious medical issue, a review of Dr. Cohen's

records demonstrate that he considered Plaintiff's gastrointestinal complaints to be adequately treated by medication. Tr. 318-30, 495-513, 1081-1101, 1281-83, 1293-97. Moreover, Dr. Cohen did not assess any functional limitations as a result of Plaintiff's stomach complaints. *See, e.g.*, *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (permitting an ALJ to discount a medical opinion that does not translate a claimant's symptoms into specific functional deficits which preclude work activity).

Further, while the evidence could support a different finding than that reached by the ALJ, the ALJ's finding that Plaintiff's gastrointestinal issues were not a severe impairment is a rational interpretation of the record. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Moreover, any error at step two is harmless because the ALJ resolved step two in Plaintiff's favor by finding severe impairments and continued the sequential analysis through step five. Also, the ALJ considered Plaintiff's non-severe gastric issues when formulating the RFC:

> When considered in conjunction with one another and [Plaintiff's] severe impairments, non-severe impairments can potentially affect [Plaintiff's] residual functional capacity. In recognition of this, and in accordance with the regulations, [Plaintiff's] non-severe impairments

have been considered when formulating the residual functional capacity below.

Tr. 29; *see Burch*, 400 F.3d at 682; *Molina*, 674 F.3d at 1115.  Finally, as is explained below, Plaintiff failed to identify a functional limitation that was not incorporated into the RFC.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 14 at 15-16.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.[3]  "First, the ALJ must determine whether there is objective

_____

[3] At the time of the ALJ's decision in May 2016, the regulation that governed the evaluation of symptom claims was SSR 16-3p, which superseded SSR 96-7p effective March 24, 2016.  SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 15776, 15776 (Mar. 24, 2016).  The ALJ's decision did not cite SSR 16-3p, but cited SSR 96-4p, which was rescinded

ORDER - 13

medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient. The ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why she discounted claimant's symptom claims)). "The clear and convincing

_____

effective June 14, 2018, in favor of the more comprehensive SSR 16-3p. Neither party argued any error in this regard.

ORDER - 14

[evidence] standard is the most demanding required in Social Security cases."

*Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or received for relief of pain or other symptoms; 6) any measures other than treatment the claimant uses or used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929(c)(1)-(3).  The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

While the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms,

ORDER - 15

the ALJ discounted Plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms.  Tr. 34.

### 1.  Inconsistent with Objective Medical Evidence

The ALJ found the severity of Plaintiff's reported symptoms were unsupported by the objective medical evidence.  Tr. 34-39.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Burch*, 400 F.3d at 680 (Minimal objective evidence is a factor which may be relied upon to discount a claimant's testimony, although it may not be the only factor); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, without citation to the record, Plaintiff contends there is objective evidence that Plaintiff's gastrointestinal and neurological conditions affect her ability to work.  By failing to support her contention with law or facts, Plaintiff waived this argument. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Carmickle*, 533 F.3d at 1161 n.2.  Regardless, Plaintiff's contention lacks merit.  After a

ORDER - 16

comprehensive summary of Plaintiff's medical history, the ALJ rationally

concluded that the objective medical evidence, including the physical evaluations

and test results, did not corroborate Plaintiff's reported symptoms. *See Tommasetti*

*v. Astrue*, 533 F.3d 1038, 1040 (9th Cir. 2008) ("[W]hen the evidence is

susceptible to more than one rational interpretation," the court will not reverse the

ALJ's decision.). This rational finding is supported by substantial evidence. *See,*

*e.g.*, Tr. 318-30, 339-43, 346-47, 439-41, 444, 448, 495-513, 613, 775-76, 780,

814, 889-90, 1081-1101, 1127-28, 1156-57, 1217-30, 1277, 1281-83, 1293-97,

1397-98, 1455-56. For instance, on December 9, 2015, Dr. Cohen stated that

Plaintiff was "doing remarkably well" and her "delayed gastric emptying seems to

be reasonably well controlled with diet and her irritable bowel component is

stable." Tr. 1293. Also, as is discussed below, the counseling treatment notes

indicate that Plaintiff's depression, anxiety, and sleep improved while Plaintiff was

in counseling and her medication managed. Tr. 461, 483, 720, 712. And testing in

January 2016 revealed normal electroencephalogram (EEG) telemetry and minor

seizure activity that was consistent with a nonepileptic, psychogenic event. Tr.

1217-30. It was recommended that Plaintiff cease using Topirmate and later noted

that thereafter Plaintiff had no more seizures. Tr. 1397. Lack of objective medical

evidence supporting the reported disabling claims was a clear and convincing reason to discount Plaintiff's disabling claims.

### 2. *Improvement with Treatment*

The ALJ discounted Plaintiff's symptom claims because her conditions improved with treatment. Tr. 36-38. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Tommasetti*, 533 F.3d at 1040. Here, the record supports the ALJ's conclusion that Plaintiff's mental-health conditions were largely situational and improved (and would improve) with therapy, medication management, and life skills, such as good sleep habits, walking, and journaling. Tr. 461 (reporting that anxiety is manageable, and mood has dramatically improved); Tr. 483 (noting that Plaintiff considered her depression to have resolved); Tr. 720 (reporting "significantly less depression"); Tr. 604-06 (reporting no seizures for over six months and normal labs); Tr. 712 (reporting that counseling is helping). While the record contains conflicting evidence as to whether Plaintiff's headaches were consistently controlled, *see* Tr. 1398 (reporting that Plaintiff had chronic migraines six weeks before the administrative hearing), it was the ALJ's role to resolve conflicts and ambiguity in the evidence. *See*

ORDER - 18

*Morgan*, 169 F.3d at 599-600. The ALJ's finding that Plaintiff's reports of disabling headaches were inconsistent with the treatment and medication records is a rational interpretation of the entire record and is supported by substantial evidence. *See, e.g.*, Tr. 439 ("Doing well with changes"); Tr. 455 (feeling better on Zoloft); Tr. 489-94 (noting no seizures for a one-year period and that headaches were medication-overuse headaches); Tr. 526 (reporting improved motivation with counseling); Tr. 557, 608 (medication helping relieve depression); Tr. 576 (noting that depression was situational); Tr. 676-751, 992-97, 1314-18 (reflecting that counseling helps); Tr. 814 (noting no seizures lately); Tr. 1041-42 (reporting stability with medication); Tr. 1055 (noting that good sleep practices improved sleep); Tr. 1093, 1099, 1293 (improving delayed gastric emptying with rigorous diet). That treatment improved Plaintiff's conditions was a clear and convincing reason to discount Plaintiff's reported disabling symptoms.

Moreover, Plaintiff failed to challenge the ALJ's conclusion that Plaintiff's reported symptoms improved with treatment. Thus, any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (determining the court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (recognizing that on appeal issues not "specifically and distinctly argued" in the party's opening brief may be disregarded by the court).

ORDER - 19

### 3. Inconsistent with Daily Living Activities

The ALJ also evaluated Plaintiff's daily living activities against her disabling claims. Tr. 33, 35. It is reasonable for an ALJ to consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. If a claimant can spend a substantial part of her day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Here, Plaintiff failed to challenge the ALJ's findings as to her daily living activities. Thus, any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2. Regardless, Plaintiff's unsupported contention fails on the merits because the identified activities of daily living, including running errands, watching television, spending time on the Internet, doing laundry, helping with dishes, socializing with friends, and attending community college contradict Plaintiff's disabling claims.

Tr. 485, 580.  This was a clear and convincing reason supported by substantial

evidence to discount Plaintiff's symptom claims.

### 4. Medication Noncompliance

Defendant argues that the ALJ discounted Plaintiff's reported symptoms

because of Plaintiff's failure to follow a prescribed course of treatment.  ECF No.

15 at 13.  Tr. 37.  Unexplained, or inadequately explained, failure to seek

treatment or follow a prescribed course of treatment may be the basis for an

adverse credibility finding unless there is good reason for the failure.  *Orn*, 495

F.3d at 638.  Here, the ALJ noted that Plaintiff's three convulsions in September

2012 were the result of medication noncompliance.  Tr. 37 (citing Tr. 489).  But

the ALJ did not specifically discount Plaintiff's reported symptoms because of this

noncompliance.  To rely on noncompliance as a basis to discount Plaintiff's

reported symptoms, the ALJ was required to give "specific, clear and convincing

reasons" for the rejection.  *Ghanim*, 763 F.3d at 1163.  Here, to the extent that the

ALJ may have offered this reasoning, the ALJ's general finding was insufficient.

Even if the ALJ's general finding was sufficient, any decision to discount

Plaintiff's symptoms as a result of this reported medication noncompliance is not

supported by substantial evidence.  The record is unclear as to whether Dr. David

Henzler's reported "medication noncompliance" reflected an intentional decision

by Plaintiff to stop taking medications for two days, Tr. 492, or an intentional overdose of pills following the one-year anniversary of her mother's death, Tr. 528. If this "medication noncompliance" was due to Plaintiff's mental-health condition, then would have been improper for the ALJ to discount Plaintiff's reported symptoms for this reason. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (recognizing when noncompliance is partly due to a claimant's mental-health condition, it may be inappropriate to consider a claimant's lack of mental-health treatment when evaluating the claimant's failure to participate in treatment). Further, the remainder of the record indicates that Plaintiff otherwise complied with medication recommendations unless a prescribed medication worsened her depression. Tr. 737-49 (taking medications as prescribed); Tr. 800-42, 1249 (no problems taking medications); Tr. 993 (planning to continue taking medications); Tr. 469 (taking medications on a consistent basis); Tr. 978 (taking anticonvulsants reliably); Tr. 333 (ceasing seizure medicine because it made her depression worse). Regarding recommended journaling, the record is conflicting as to whether Plaintiff consistently kept a journal as recommended. *Compare* Tr. 450, 452 (not keeping food log as recommended) *and* Tr. 768 (Plaintiff was

"responsive to prompts, homework, journaling, and activities" and had good attendance record for the year therapy was provided).

Even if the ALJ erred by discounting Plaintiff's symptom claims because of treatment noncompliance, this error is harmless because, as discussed above, the ALJ provided other legally sufficient reasons to discount Plaintiff's reported symptoms. *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where only two of the ALJ's four reasons to discredit the claimant were valid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Tommasetti*, 533 F.3d at 1038.[4]

**C. RFC**

Plaintiff contends the RFC failed to account for her mental and physical limitations. ECF No. 14 at 16-18.

---

[4] Moreover, the Court notes that Plaintiff did not challenge the ALJ's noncompliance finding. Thus, if the ALJ discounted Plaintiff's reported symptoms due to noncompliance, Plaintiff waived any argument related to the finding. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Carmickle*, 533 F.3d at 1161 n.2.

At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). An RFC finding need not be identical to a medical opinion; rather, it must be consistent with the medical opinion. *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Therefore, to the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan*, 169 F.3d at 599-600. The ALJ was required to include all of Plaintiff's "functional limitations, both physical and mental" in the hypothetical question posed to the vocational expert." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995).

Plaintiff contends the ALJ failed to incorporate each of her physical and psychological impairments into the RFC, particularly her inability to maintain attendance and work effectively during the workday and workweek, as opined by

ORDER - 24

Nancy Winfrey, Ph.D., John Arnold, Ph.D., and Tushar Kumar, M.D. ECF No. 14 at 16-18. This argument is unpersuasive.

First, although arguing that the ALJ failed to incorporate the opinions of these three physicians into the RFC, Plaintiff failed to recognize and challenge the varying weight given to each of these doctor's opinions by the ALJ: Dr. Winfrey (great weight), Dr. Arnold (some weight), and Dr. Kumar (partial weight). Tr. 39-40. By failing to challenge the discounted weight given to Dr. Arnold's and Dr. Kumar's opinions, Plaintiff waived challenging the ALJ's decision to discount these opinions. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Carmickle*, 533 F.3d at 1161 n.2 (9th Cir. 2008).

Second, as explained below, the ALJ adequately incorporated the functional limitations supported by the record into the RFC. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's

opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216.

*1. Dr. Winfrey*

Dr. Winfrey reviewed Plaintiff's longitudinal medical record and testified at the administrative hearing as the medical expert. Tr. 56-64. Dr. Winfrey diagnosed Plaintiff with depression, a bereavement disorder, anxiety, and a personality disorder. Tr. 57. Dr. Winfrey testified that based on Plaintiff's

conditions, Plaintiff had historically only mild difficulties maintaining concentration, persistence, and pace, but with recent auditory hallucinations, Plaintiff was moderately limited in maintaining concentration, persistence, and place. Tr. 57-64. Dr. Winfrey also opined that Plaintiff had moderate difficulties in maintaining social functioning and that her functioning waxed and waned. Tr. 57-64.

The ALJ gave great weight to Dr. Winfrey's opinion. Tr. 39. Plaintiff argues that, even though the ALJ gave great weight to Dr. Winfrey's opinion, the ALJ failed to include Dr. Winfrey's opined limits regarding social functioning and concentration, persistence, and pace into the RFC. ECF No. 14 at 16-18. However, the ALJ included these opined limits in the RFC. *See* Tr. 39 ("Although Dr. Winfrey did not provide an opinion regarding the [Plaintiff's] mental residual functional capacity, the [ALJ gave] Dr. Winfrey's opinion great weight as it assisted the [ALJ] in assessing the presence and severity of [Plaintiff's] mental impairments, as well as assessing a" RFC.); Tr. 40 ("Dr. Winfrey testified that [Plaintiff's] functioning waxes and wanes, but that in both social functioning and maintaining concentration, persistence, Dr. Winfrey opined that [Plaintiff's] difficulties fluctuated between mild and moderate but certainly did not approach the marked level."). The RFC limits Plaintiff to simple and routine tasks with

occasional detailed work, superficial brief contact with the general public and occasional non-collaborative contact with coworkers, independent work with objects rather than people, and ordinary production requirements. Tr. 32. This RFC adequately incorporates Dr. Winfrey's opined limitations. *See Stubbs-Danielson*, 539 F.3d at 1174; *Turner*, 613 F.3d at 1222-23 (recognizing that the RFC need not be identical to a medical opinion but rather must be consistent with the medical opinion). Moreover, each of the three jobs identified by the vocational expert based on the RFC—stuffer, toy assembler, and basket filler—involve a Specific Vocational Preparation (SVP) of 1 or 2. The time needed to learn a SVP1 job is no more than a short demonstration and a SVP2 job is up to and including one month. 20 C.F.R. § 404.1568(a). These three unskilled positions involve simple work requiring little or no judgment. 20 C.F.R. § 416.968(a). Plaintiff fails to establish any consequential error.

   *2. Dr. Arnold*

   Dr. Arnold examined Plaintiff on January 2, 2014, Tr. 543-46, and December 8, 2015, Tr. 1211-14. In January 2014, Dr. Arnold diagnosed Plaintiff with depressed mood and minimal clinical anxiety. Tr. 543-46. In December 2015, Dr. Arnold diagnosed Plaintiff with depressed mood suggestive of severe clinical depression and mild clinical anxiety. Tr. 1211-14. Amongst other mild to

ORDER - 28

moderate limitations, Dr. Arnold opined on "check-the-box" forms that Plaintiff was moderately limited in the ability to learn new tasks, adapt to change in a routine work setting, ask simple questions, request assistance, set realistic goals, and plan independently, and markedly limited in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms.  Tr. 545, 1213.

The ALJ gave Dr. Arnold's opinion some weight.  Tr. 40.  Because Dr. Arnold's opinion was contradicted by Dr. Winfrey's opinion, Tr. 57-64, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Arnold's opinion.  *See Bayliss*, 427 F.3d at 1216.

First, as mentioned above, Plaintiff failed to challenge the weight the ALJ gave to Dr. Arnold's opinions.  Therefore, Plaintiff waived any such challenge. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Carmickle*, 533 F.3d at 1161 n.2.

Second, addressing the merits, an ALJ may discount an opinion that is not consistent with the provider's notes, the other medical evidence, or the record as a whole.  20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Tommasetti,*

ORDER - 29

533 F.3d at 1041 (Incongruity between a doctor's medical opinion and treatment records or notes is a specific and legitimate reason to discount a doctor's opinion.). Here, the ALJ found Dr. Arnold's "check-the-box" opinion regarding the severity of Plaintiff's limitations was not supported by Plaintiff's treatment records, the other medical-expert opinions, or Plaintiff's activities of daily living. Tr. 39-40. Specifically, the ALJ found Dr. Arnold's opinion that Plaintiff has marked limitations in her ability to complete a normal workday or workweek was in "stark contrast to" Plaintiff's college attendance for several semesters. Tr. 40; *see Morgan*, 169 F.3d at 601-02 (An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities.). The ALJ also noted that Dr. Arnold had opined that vocational training would minimize or eliminate Plaintiff's barriers to employment. Tr. 40 (citing Tr. 545, 1213). The ALJ gave specific and legitimate reasons supported by substantial evidence for discounting Dr. Arnold's opinions.

Moreover, the ALJ need only incorporate those functional limitations that are supported by the record. *See Stubbs-Danielson*, 539 F.3d at 1175. Plaintiff fails to establish how the RFC, which limits Plaintiff to simple and routine tasks with occasional detailed work with objects and with ordinary production requirements, fails to incorporate the evidentiary supported functional limitations.

ORDER - 30

Finally, the three jobs identified by the vocational expert are SVP1 and SVP2 jobs—jobs that are learned in a short period of time. Plaintiff failed to establish any consequential error.

### 3. Dr. Kumar

On July 16, 2011, Dr. Kumar performed a consultative psychiatric examination of Plaintiff. Tr. 482-88. Dr. Kumar diagnosed Plaintiff with gastrointestinal problems, a seizure disorder, and migraines. Tr. 487. Noting that his opinion was based on Plaintiff's psychiatric evaluation and not Plaintiff's reports of physical symptoms, Dr. Kumar opined that Plaintiff has the ability to perform simple and repetitive tasks but that she would have difficulty performing tasks involving computation or math; has moderate to severe difficulty with detailed and complex tasks; can accept instructions from supervisors; is mildly to moderately impaired with interactions with coworkers and the public; is able to perform work on a consistent basis without special or additional instruction; is moderately impaired in the ability to maintain regular attendance in the workplace; is mildly to moderately impaired in the ability to complete a normal workday and workweek without interruptions; and is mildly to moderately impaired in the ability to deal with the usual stress encountered in the workplace. Tr. 487-88.

ORDER - 31

The ALJ gave Dr. Kumar's opinion partial weight. Tr. 40. Because Dr. Kumar's opinion was contradicted by Dr. Winfrey's opinion, which was supported by independent medical evidence, Tr. 57-64, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. Kumar's opinion. *See Bayliss*, 427 F.3d at 1216.

Plaintiff challenges the ALJ's failure to include Dr. Kumar's opinion that Plaintiff will be absent from work due to her impairments. ECF No. 14 at 18-19. As previously mentioned, Plaintiff fails to challenge the ALJ's decision to discount Dr. Kumar's opinion. Thus, any challenge to the ALJ's decision to discount Dr. Kumar's opinion is waived. *See Indep. Towers of Wash.*, 350 F.3d at 929; *Carmickle*, 533 F.3d at 1161 n.2.

Regardless, the ALJ gave specific and legitimate reasons for discounting Dr. Kumar's opinion, i.e., it was not supported by the objective medical evidence and was based solely on Plaintiff's self-reports and Dr. Kumar's one-time evaluation. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record.). Based on the medical record, the ALJ rationally found Dr. Winfrey's opinion to be more consistent with the

ORDER - 32

objective medical evidence, than Dr. Kumar's opinion. And again, Plaintiff did not challenge the weight given to Dr. Winfrey's opinion.

Moreover, by limiting Plaintiff's contact with the public and coworkers and requiring jobs that involve simple and routine tasks with occasional detailed work, which is done independently with objects and with only ordinary production requirements, the ALJ incorporated Dr. Kumar's opined social limitations and waxing and waning into the RFC. Tr. 32, 41. *See Stubbs-Danielson*, 539 F.3d at 1175. Plaintiff failed to establish any consequential error. *See id.* (requiring a claimant challenging the RFC to do more than merely restate her arguments that the ALJ improperly discounted certain evidence).

**D. Step Five**

Plaintiff argues the ALJ erred at step five. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d 1462. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.

*Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d 1219, 1228 (9th Cir. 2009). As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th

ORDER - 34

Cir. 1986). A claimant fails to establish that a step five determination is flawed by simply restating argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson*, 539 F.3d at 1175-76.

Here, Plaintiff simply restates her argument that the ALJ improperly discounted her symptom claims and failed to incorporate Dr. Winfrey's opinion and Dr. Arnold's and Dr. Kumar's (rejected) opinions. This restated argument is insufficient. *See id.* Moreover, consistent with the RFC discussion above, the ALJ's hypothetical was based on medical assumptions supported by substantial evidence in the record that reflected all of Plaintiff's limitations. *See Osenbrook*, 240 F.3d at 1165. Because the ALJ's decision to discount Dr. Arnold's and Dr. Kumar's opinions regarding Plaintiff's daily and weekly attendance abilities is supported by substantial evidence and is not challenged by Plaintiff, the ALJ need not have included these discounted opinions in either the RFC or the hypothetical presented to the vocational expert. Therefore, the ALJ properly did not consider the vocational expert's testimony that an individual missing in excess of one day per month is not capable of maintaining employment.

The ALJ's hypothetical was accurate, detailed, and supported by the medical record. Based on the vocational expert's response to the posed complete

hypothetical, the ALJ rationally found Plaintiff capable of performing work that exists in significant numbers in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. The Clerk's Office is to enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED December 17, 2018.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 36